1

2

3     UNITED STATES DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
4     AT TACOMA

5

      TAD McGEER, et al.,
6
                    Plaintiffs,                      CASE NO. C09-5330 BHS
7
            v.                                       ORDER DENYING MOTION
8                                                    FOR PARTIAL
      BNSF RAILWAY COMPANY, et al.,                  RECONSIDERATION
9
                    Defendants.
10

11          This matter comes before the Court on Plaintiffs' motion for partial

12    reconsideration (Dkt. 84) and the Court's order allowing additional briefing on the issue

13    of certain types of damages (Dkt. 96). The Court has considered the pleadings filed in

14    support of the motion and the remainder of the file, and hereby denies motion for the

15    reasons stated herein.

16                       **I.  PROCEDURAL & FACTUAL HISTORY**

17          On June 8, 2009, Plaintiffs initiated this lawsuit seeking recovery for damages

18    caused by a fire that allegedly started along BNSF track in the Columbia Gorge on or

19    about September 20, 2007, and eventually burned Plaintiffs' residential properties. *See*

20    Dkt. 1 at 1-11 (Complaint for Damages).  Plaintiffs' complaint alleged only one set of

21    facts – i.e., the September 20, 2007 fire – but made claims under negligence, trespass,

22

statutory nuisance (RCW 7.48.120), violation of the timber trespass statutes (RCW 64.12.030-.040) and the fire act (RCW 4.24.040-.060).  *Id.* at 7.  After the case was initiated, two other pending federal cases with closely related or similar facts certified questions to the Washington State Supreme Court which required that court to construe the timber trespass statutes and determine whether they apply to fire that spreads from BNSF property and destroys trees on the property of others, just as in this case. *Broughton Lumber v. BNSF Railway Co, et al.*, 174 Wn.2d 619, 623 (2012); *Jongeward v. BNSF Railway*, 174 Wn.2d 598, 590 (2012).  *Broughton Lumber* actually involved the same September 20, 2007 fire in the Columbia Gorge and was initiated by a neighbor of the Plaintiffs in this action.  The *Jongeward* case involved a different fire, allegedly started by BNSF, but involved the same claims and the same counsel represented the plaintiffs there and here. *See* Dkt. 41 at 2 (Declaration of Richard C. Eymann).

Given the related and relevant nature of the questions to be determined by the Washington Supreme Court in the *Broughton Lumber* and *Jongeward* matters, this case was continued until the Washington Supreme Court issued its opinions in those two closely related cases. *See* Dkt. 44 at 1-2 (Order).  Those opinions have now issued.

On February 13, 2013, BNSF filed a motion for partial summary judgment against Plaintiffs. Dkt. 77.  On March 1, 2013, Plaintiffs filed a response, which did not oppose the majority of BNSF's motion for partial summary judgment.  Dkt. 79.  On March 8, 2013, BNSF filed a reply brief.  Dkt. 80.

On March 29, 2013, the Court granted BNSF's motion for partial summary judgment.  Dkt. 83.  Finding the motion largely unopposed, the Court determined the

1    only remaining issue BNSF asked the Court to decide is "whether damages for loss of use

2    and enjoyment of Plaintiffs' property, personal discomfort, annoyance, irritation and

3    anguish are available where their claim for nuisance is based solely on negligence or

4    negligent acts by the defendants." *Id.* at 3.  The Court determined that Plaintiffs "are not

5    allowed to seek separate and additional damages for annoyance, inconvenience,

6    discomfort or mental anguish . . . ." *Id.* at 8.

7        On April 1, 2013, Plaintiffs filed a motion for partial reconsideration, arguing that

8    BNSF raised the argument regarding damages for the first time in its reply brief, that

9    Plaintiffs have not had the opportunity to respond, and thus the Court should modify its

10   order by limiting it to the relief BNSF requested: "dismissal of Plaintiffs' trespass and

11   nuisance claims."  Dkt. 84 at 1-2.

12       On April 10, 2013, the Court issued an order allowing additional briefing and

13   renoting the motion for partial reconsideration.  Dkt. 96.  The Court provided the

14   Plaintiffs an opportunity to file a brief in support of their contention that they are entitled

15   to pursue the damages for personal discomfort, annoyance, irritation and anguish.  *Id.* at

16   5.  BNSF was permitted to file a response to Plaintiffs' brief. *Id.*

17       On April 25, 2013, Plaintiffs made a motion to file a two-page reply to BNSF's

18   response for the limited purpose of addressing BNSF's argument that a "statement" made

19   by Lela Bush, which Plaintiffs described in their brief, should be stricken.  Dkt. 122.  On

20   the same day, the Court issued an order granting Plaintiffs' motion to file a two-page

21   reply.  Dkt. 123.  On April 26, 2013, Plaintiffs filed a reply. Dkt. 126.

22

**II. DISCUSSION**

**A.    Legal Standards**

    **1.    Motion for Reconsideration**

    Motions for reconsideration are governed by Local Rule CR 7(h), which provides as follows:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rule CR 7(h)(1).

    **2.    Summary Judgment**

    Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

1   jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

2   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

3   626, 630 (9th Cir. 1987).

4       Here, the issue involving the type of damages Plaintiffs may pursue is purely a

5   legal question. Thus, the Court determined whether to grant summary judgment as a

6   matter of law.

7   **B.    Parties' Arguments[1]**

8       **1.    Zone of Danger**

9       According to the Plaintiffs, Plaintiffs Ben and Lela Bush[2] are entitled to pursue

10  mental distress damages under the "zone of danger" test articulated in *Murphy v.

11  Tacoma*, 60 Wn.2d 603 (1962).  Dkt. 102 at 2.  Despite BNSF's position, Plaintiffs

12  maintain that under Washington law the zone of danger test remains viable. Dkt. 3-5.

13  Plaintiffs argue that the Washington State Supreme Court in *Hunsley v. Giard*, 87 Wn.2d

14  424, 428 (1976), did not discard or overrule the stricter "zone of danger" test as a distinct

15  basis of recovery for mental distress injuries.  *Id*. at 5 (*citing Wilson v. Key Tronic Corp*.,

16  40 Wn. App. 802, 809-10 (1985) (recognizing the continued viability of both the former

17  "zone of danger" test iterated in *Murphy* and the modern test laid out in *Hunsley* for

18  ─────────────────

19      [1]    Plaintiffs explicitly state that they "are not contending Defendants are liable under the
   tort of negligent infliction of emotional distress."  Dkt. 102 at 4 n. 2.

20      [2]  In their response, Defendants move to strike the "statement" of Lela Bush on various
21  grounds.  Dkt. 119 at 1-2.  Although it certainly appears the last years of the Bushes' life
   together were difficult, the information Plaintiffs present in their brief regarding their life after
   the fire is not relevant to the Court's determination. Therefore, Defendants' request to strike is
22  moot.

1   claims of negligent infliction of emotional distress and applying the former to uphold a

2   mental distress award when plaintiff property owners offered no proof of objective

3   symptoms of mental distress at trial)).[3] Plaintiffs maintain that "in cases which do not

4   involve malice or intent to do harm, there must be either an immediate physical invasion

5   of the plaintiff's person or security, or a direct possibility of such an invasion in order

6   that recovery may be had for mental anguish or distress of mind." *Id.* at 2 *(citing Murphy*,

7   60 Wn.2d at 620-21).

8          Plaintiffs stated they intend to present evidence at trial that Plaintiffs Ben and Lela

9   Bush were within the zone of danger and suffered harm as a result.  *Id.* at 6. Plaintiffs

10  maintain they should be entitled to put on such evidence at trial to demonstrate the "fright

11  and emotional distress caused by the direct possibility of the fire invading their persons or

12  security." *Id.* at 8.  Accordingly, Plaintiffs argue that the question of whether they were

13  within the zone of danger and suffered mental distress is a question to be put to the jury

14  upon proper instruction.  *Id.*

15

16  _____

17          [3] In a footnote Plaintiffs anticipate that Defendants will attempt to distinguish *Wilson*
    because it is not a negligence case, but a nuisance case. Dkt. 102 at 5 n.3. Plaintiffs argue:
18          The distinction is meaningless. First, in analyzing whether mental distress
            damages are available, Washington law does not draw a distinction between
19          nuisance and negligence claims.  Courts instead look to whether the tortious
            conduct was done intentionally or not. *See, e.g., Kloepfel*, 149 Wn.2d at 199-201.
20          Not all nuisances arise from intentional conduct (like in this case).  *See Hostetler
            v. Ward*, 41 Wn. App. 343, 704 P.2d 1193 (1985). Second, the property owners'
21          claims against the defendants in Wilson  included negligence.  *Wilson*, 40 Wn.
            App. at 805. Third, the *Wilson* court made clear the older "zone of danger" test
22          applies in cases "when the mental distress results from less than intentional or
            malicious conduct."  *Id.* at 809-10.

1    BNSF argues in relevant part that *Murphy* does not support Plaintiffs' position that

2  they are entitled to the damages they seek, the "zone of danger" test articulated therein is

3  dicta, and essentially whatever viability the test had under Washington law has been

4  abandoned as demonstrated by subsequent case law.  Dkt. 119 at 3-7.

5    Washington law regarding negligent interference with property rights or interests

6  has developed since *Murphy* issued in 1965.  Although in 1985 the Washington State

7  Court of Appeals applied what it termed the "former 'zone of danger test'" articulated in

8  *Murphy* to *Wilson*, a case involving interference with landowner's rights resulting from a

9  company's disposal of toxic substances, the court awarded damages in the context of a

10  nuisance claim.  *Wilson*, 40 Wn. App. at 809-10.  While Plaintiffs claim Washington

11  courts make no distinction between nuisance and negligence claims (*see supra. citing*

12  Dkt. 102 at 5 n. 2), as the Court stated in its prior order and as the parties acknowledge, in

13  post-*Murph*y cases a "negligence claim presented in the garb of nuisance need not be

14  considered apart from the negligence claim." *Atherton Condo Ass'n v. Blume Dev. Co.*,

15  115 Wn.2d 506, 527 (1990) (*citing Hostetler v. Ward*, 41 Wn. App. 343, 360 (1985)). "In

16  those situations where the alleged nuisance is the result of the defendants alleged

17  negligent conduct, rules of negligence apply." *Id*.  As the Court previously determined,

18  while *Atherton* and *Hostetler* do not directly address the damages issue remaining in this

19  case, the rule articulated above and applied in those cases is a general rule, and nothing in

20  either opinion indicates the application of the rule is limited to liability only. Dkt. 83 at 6-

21  7  (*citing Atherton*, 115 Wn.2d 506; *Hostetler*, 41 Wn. App. 343; *Sourakli v. Kyriakos*,

22

*Inc.*144 Wn. App. 501, 515 (2008) (*citing Hostetler*, the court held in relevant part

"[b]ecause Sourakli's nuisance theory … rests on the same set of facts as his negligence

theory…, it does not provide an alternative basis for damages")).   Therefore, as the Court

indicated in its previous order, it "declines to read a limitation into the rule that, as here,

in 'situations where the alleged nuisance is the result of the defendants' alleged negligent

conduct, rules of negligence apply.'"  *Id.* at 7 (*citing Atherton*, 115 Wn.2d at 527)

(citation omitted).  Damages recoverable in a nuisance cause of action, such as loss of

enjoyment of property, annoyance, personal discomfort or irritation are not available in

this negligence case.

### 2.      Foreseeable and Probable Consequences of Failure to Exercise Due Care

Plaintiffs maintain that all plaintiffs are entitled to damages for loss of enjoyment,

annoyance, inconvenience and emotional disturbance because such damages are the

foreseeable and probable consequences of a lack of due care in failing to prevent the

spread of the fire to Plaintiffs' properties.  Dkt. 102 at 2.

Defendants state that the "'foreseeability test' outlined in *Hunsley*" has been

abandoned (Dkt. 119 at 9).  The Court finds that, while the test outlined in *Hunsley* has

been greatly refined, foreseeeablity at least remains a factor in determining the class of

plaintiffs who may recover emotional distress damages in certain types of negligence

cases and is relevant to restricting the scope of damages.  *See, e.g., Colbert v. Moomba

Sports, Inc.*, 163 Wn. 2d 43, 52 (2008) (involving tort of negligent infliction of emotional

distress where court summarizes the development of Washington cases progressively

1   limiting the reasonably foreseeable class of plaintiffs who can recover for emotional

2   distress and concludes foreseeable class of plaintiffs excludes those who did not witness

3   accident or arrive on the scene shortly thereafter). However, for the reasons set forth

4   below, the Court finds it unnecessary to further discuss the arguments advanced by either

5   Plaintiffs or Defendants on this issue because it determines that foreseeablity is not a

6   factor in determining whether Plaintiffs in this case can pursue recovery for emotional

7   distress.

8           In cases like the present, which are based on interference with property rights or

9   interests, absent an alleged cause of action for negligent infliction of emotional distress,

10  Washington law permits recovery for inconvenience, discomfort, and emotion or mental

11  anguish only for conduct that was intentional.  *See, e.g., Birchler v. Costello Land Co.,*

12  *Inc.,* 133 Wn.2d 106, 117 (1997) (involving damages to properties resulting from grading

13  companies' encroachment on property and removal of vegetation from land, court

14  recognizes that damages for inconvenience, discomfort and mental anguish may result

15  from intentional interference with property interests); *Pepper v. J.J. Welcom*

16  *Construction Co., Inc.*, 73 Wn. App 523, 547-548 (1994) (involving damage to properties

17  caused by excessive water runoff where court notes this state has recognized that

18  damages for inconvenience, discomfort and mental anguish may result from an

19  intentional interference with property interest);  *Schwarzmann v. Association of*

20  *Apartment Owners of Bridgehaven*, 33 Wn. App. 397, 404 (1982) (involving interference

21  with business expectancy where court notes this state has recognized that damages for

22  inconvenience, discomfort and mental anguish may result from an intentional

1   interference with property interest).  Plaintiffs explicitly stated they do not maintain that

2   Defendants are liable under the tort of negligent infliction of emotional distress.  Dkt. 102

3   at 4 n. 2.   The parties also agree that Defendants' conduct, which led to the fire resulting

4   in damages to their properties, constitutes negligence, not intentional interference with

5   Plaintiffs' property rights or interests.  Therefore, damages for inconvenience,

6   discomfort, mental or emotional anguish are not available in this case.

7   **C.      Loss of Use**

8          In its prior order, the Court did not directly address recovery for loss of use

9   and enjoyment. *See* Dkt. 83.  To the extent loss of use applies to a negligence cause of

10  action, Plaintiffs may pursue recovery for loss of use of their properties. As discussed

11  above, however, damages for loss of enjoyment, which are recoverable under a nuisance

12  cause of action, are not recoverable here.

13                                      **III. ORDER**

14         Therefore, it is hereby **ORDERED** that Defendants' motion for partial

15  reconsideration is **DENIED** Dkt. 84), and the damages Plaintiffs may pursue are limited

16  to those recoverable for negligent interference with property rights or interests.  To the

17  extent the reasoning herein conflicts with or modifies that of the Court's prior orders, this

18  order supersedes the reasoning set forth in those orders.

19         Dated this 1st day of May, 2013.

20

21                                      _____
                                        BENJAMIN H. SETTLE
22                                      United States District Judge